UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KRISTIN M. W.,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 4:24-CV-00440-CDL |
| **FRANK BISIGNANO,[1]** **Commissioner of the** **Social Security Administration,** | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision and **remands** this action for further proceedings.

**I.   Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]   Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

## II.    Procedural History

On June 30, 2021, Plaintiff filed an application for Social Security Disability Insurance benefits. (R. 17). She alleged that she became disabled on or about February 9, 2020 due to a combination of physical and mental impairments, including blind or low vision, asthma, undiagnosed GI issues, back injury, arthritis, depression, possible undiagnosed dissociative identity disorder, migraines, and jaw dislocation/injury. (R. 77).[2] She was 31 years old on the alleged onset date. On September 7, 2022, Plaintiff also filed

---

[2]   Plaintiff later withdrew her Title II application on the advice of counsel due to the distant age of her last-insured date. (*See* R. 17; R. 49-52). Based on the protected filing date of her Title II application, the amended alleged onset date for her Title XVI claim is June 30, 2021. (R. 17).

2

an application for Supplemental Security Income benefits, alleging additional emotional, psychological, and anxiety issues, including post-traumatic stress disorder (PTSD), insomnia, and bipolar disorder. (*Id.*; R. 98).

The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing, and an Administrative Law Judge (the "ALJ") held a telephone hearing on December 7, 2023, at which Plaintiff and a vocational expert (VE) testified. (R. 42-76). The ALJ issued a decision on March 15, 2024, finding Plaintiff not disabled and denying disability benefits. (R. 14-40). The Appeals Council denied Plaintiff's request for review on July 17, 2024, which rendered the ALJ's decision the agency's final decision. (R. 1-6). Following the Appeals Council's denial, Plaintiff timely filed a Complaint in this Court. Accordingly, the Court has jurisdiction to review the ALJ's March 15, 2024 decision under 42 U.S.C. § 405(g).

**III.    Background**

At the hearing, Plaintiff testified that she lives in a one-story house with her boyfriend. Her driver's license had been suspended for a failure to timely renew her vehicle registration, shortly before she injured her anterior cruciate ligament (ACL), requiring surgery. (R. 56). She stated that she had not been able to leave the house since the injury. Plaintiff completed high school and some college, and she can read, write, and count change. (*Id.*). She has worked as a cell-phone salesperson in the past.

In September of 2021, a few months after her amended alleged onset date, Plaintiff moved to Oklahoma from Nevada. (R. 57, 79). Plaintiff testified that she has been unable to work because of "unmanageable" physical and mental problems, including bowel

3

incontinence and frequent diarrhea, and emotional challenges arising from her GI symptoms. (R. 57). Her gastroenterologist prescribed a strict diet, which has improved her symptoms "about [] 50%." (R. 57-58). Plaintiff injured her ACL in June of 2023, and during the hearing six months later, she testified that her recovery was "slow, but progress," and that she used crutches "mostly for balance at this point" and wore a brace on her knee, but that her knee injury still prevented her from walking normally. (R. 58).

Plaintiff testified that during a typical day, she takes care of personal hygiene, feeds her dogs, and performs chores such as dusting, vacuuming, or dishes before lunch. (*Id*.). After lunch she will "have kind of a lazy afternoon of reading until it's time to cook dinner and prepare a meal," and after dinner she continues reading until bedtime. (R. 58-59). Her hobbies of reading and caring for houseplants keep her busy and "bring [her] joy." (R. 59). She orders groceries online and has them delivered because she does not like going out to shop.

Plaintiff has had emergency room visits due to asthma, but none within the previous two years, and she uses a maintenance inhaler twice a day. She has had anal surgeries that led to bowel incontinence, which cause accidents "about once a week at least." (R. 60-61). She also has food intolerances that can cause violent illness, vomiting, nausea, and uncontrollable diarrhea, and she deals with some of these symptoms daily. (R. 62-63).

Plaintiff attends mental health counseling for bipolar depression disorder, borderline personality disorder, and ADHD, and medications have been ineffective for those conditions. (R. 64-65). She avoids leaving home due to experiences having panic attacks and feeling unsafe, and she struggles with social isolation. (R. 65-66). She has suicidal

4

ideation "every now and then," and she experiences auditory and visual hallucinations while driving and while at home. (R. 66-67). Plaintiff experiences acute anxiety or panic attacks stemming from abuse in the past. (R. 68-69). She trained a dog that she uses as a service animal to control anxiety attacks and to help her find her medications. The service animal is not prescribed, but Plaintiff testified that a doctor told her it would be helpful. (R. 71).

During the ALJ hearing, Plaintiff's counsel noted that Plaintiff had recently had knee surgery that had required her to use crutches afterward longer than expected. (R. 48). He noted Plaintiff suffers from bowel incontinence regularly due to GI problems, but he asserted that most of Plaintiff's limitations are based on her mental impairments. (R. 48-49). Plaintiff's counsel noted that in early 2023, Plaintiff was referred for electroconvulsive therapy (ECT) due to the limited effectiveness of medications for her mental health conditions. (*Id.*). Counsel argued that Plaintiff's mental health impairments would qualify her as disabled either at step three or step five of the sequential evaluation process. (*Id.*).

The record indicates that Aaron Pierce, D.O. examined Plaintiff on February 1, 2023, noting that she was appropriately dressed, with good grooming and hygiene, and was polite, cooperative, and engaged with the interview, but her affect was tearful and depressed. (R. 479). Plaintiff was alert, maintained good attention throughout the interview, and showed good insight and judgment, with intelligence estimated to be average. (*Id.*). Dr. Pierce concluded that, "[g]iven the severity of depression and limited responses to medications thus far," he felt that Plaintiff "would be a good candidate for [ECT]." (*Id.*).

### III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a

claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ considers work activity. If the claimant is gainfully employed, the ALJ will find the claimant not disabled. *Id.* At step two, the ALJ considers the impairment's severity and duration. *Id.* At step three, the ALJ determines whether the medical impairment meets an appropriate listing and the appropriate residual functional capacity (RFC). *Id.* At step four, the ALJ finds whether, in light of the RFC, the claimant may return to her previous work. *Id.* If not, the ALJ moves to step five, determining whether at the claimant's RFC, age, education, and work experience, there are jobs available in significant numbers in the national economy the claimant can perform. *Id.*

The plaintiff bears the burden of establishing a prima facie case for steps one through four. *Grogan,* 399 F.3d at 1261. If the plaintiff's burden is met, "the burden of proof shifts to the Commission at step five to show that the claimant retains sufficient RFC to perform work in the national economy." *Id.*

Here, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of June 30, 2021. (R. 20). At step two, the ALJ found that Plaintiff has severe impairments of asthma, irritable bowel syndrome, migraine headaches, obesity, major depressive disorder, anxiety, and PTSD. (*Id.*). The ALJ noted that Plaintiff alleged low vision, but determined that her vision impairment is non-severe, noting that "prescription glasses have resolved the visual acuity impairment and [Plaintiff's] eye impairment does not limit her ability to perform work functions." (*Id.*). Following Plaintiff's left knee ACL reconstruction in August 2023, she "moved slowly but otherwise was doing well," and she was prescribed physical therapy. The ALJ concluded

that this condition is non-severe. (R. 21). The ALJ stated that she "searched for but did not find evidence of treatment" for several alleged issues, including jaw dislocation, back injury, possible "undiagnosed Dissociative Identity Disorder," and arthritis. (R. 22).

At step three, the ALJ found the Plaintiff's combination of impairments do not meet or medically equal the severity of a Listing, specifically considering Listings for mental impairments, Listing 1.18 (abnormality of a major joint), Listing 3.03 (asthma), the Commissioner's criteria for evaluation of obesity, and the Commissioner's guidance on evaluation of migraines. (R. 22-23). The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a moderate limitation in each of the four domains of understanding, remembering, or applying information; in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 23-24).

At step four, the ALJ determined that Plaintiff has the RFC

> to perform light work as defined in 20 C.F.R. § 416.967(b) except with additional limitations that include occasional exposure to pulmonary irritants such as concentrations of dusts, fumes, and gases. [Plaintiff] can understand, remember, and carry out detailed but not complex instructions, can occasionally interact with the public; and can deal with occasional changes in a routine work setting. [Plaintiff] should avoid exposure to moving mechanical parts and high, exposed places.

(R. 25). In support of this finding, the ALJ stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, . . . the medical opinion(s) and prior administrative

7

medical finding(s)" in the record. (*Id.*).

Based on the RFC determination, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. 31). Accordingly, the ALJ proceeded to step five. Plaintiff was 31 years old at the time of her alleged disability onset, in the category of "younger individual." (R. 34). Citing the VE's testimony as to a hypothetical person with Plaintiff's age, education, and RFC, the ALJ found Plaintiff can perform the requirements of representative occupations including:

> *Assembler*, unskilled, light exertion, specific vocational preparation (SVP) Level 2, Dictionary of Occupational Titles (DOT) # 706.684-022, with approximately 16,000 such jobs in the national economy;
>
> *Material distributor*, unskilled, light exertion, SVP 2, DOT # 230.687-010, with approximately 20,000 such jobs in the national economy; and
>
> *Bagger*, unskilled, light exertion, SVP 2, DOT # 582.687-010, with approximately 15,000 such jobs in the national economy.

(R. 35). The ALJ determined that the VE's testimony is consistent with the DOT and that the Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Thus, the ALJ found Plaintiff is not disabled at step five.

## IV. Discussion

### A. RFC

Plaintiff challenges the ALJ's RFC determination on multiple bases, each of which fails to establish reversible error. First, Plaintiff argues that the ALJ failed to perform an adequate function-by-function assessment in determining that Plaintiff can stand, walk, sit, push, and pull as required to perform light work. This argument fails.

The ALJ's decision here included an extensive discussion section, spanning more

8

than nine single-spaced pages, explaining the ALJ's RFC determination, with reference to specific medical and non-medical evidence in the record. The decision noted that

> during a September 2021 telemedicine visit with her gastroenterologist, [Plaintiff] complained of abdominal pain, vomiting, and diarrhea but denied change in bowel habits, constipation, fecal incontinence, rectal bleeding, gas, or jaundice. She denied fatigue, loss of appetite, malaise, sweats, weight gait, or weight loss and also denied musculoskeletal, neurological, respiratory, and psychiatric symptoms. In February and April 2023, the claimant was noted to have no overt difficulties with ambulation. More recently, in June 2023, the [Plaintiff's] review of systems was negative for abdominal distension, abdominal pain, constipation, diarrhea, and nausea. It was also negative for chest tightness and shortness of breath, and an examination revealed normal breath sounds. The evidence of record is not consistent with the [Plaintiff's] allegations of frequent physical symptoms, but they were considered when limiting to the light exertional level. Moreover, despite generally normal pulmonary examinations and denial of pulmonary symptoms during treatment visits, the undersigned considered the [Plaintiff's] asthma when limiting the [Plaintiff] to only occasional exposure to pulmonary irritants such as concentrations of dusts, fumes, and gases. Migraines and physical symptoms were considered when limiting the [Plaintiff] to avoiding exposure to moving mechanical parts and high exposed places as well as when limiting to detailed but not complex tasks.

(R. 30 (internal citations omitted)). As such, the ALJ's decision adequately fulfilled the requirement to "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (noting that ALJ's "failure to find explicitly that [claimant] was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome of this case").

Plaintiff contends that the ALJ had a duty to solicit additional evidence documenting the severity and frequency of Plaintiff's migraine headaches. The ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)). Nonetheless, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004).

Here, the ALJ noted limited medical evidence that Plaintiff received treatment for migraines (R. 28, 30) and explained that she considered Plaintiff's migraines in the RFC by excluding exposure to moving mechanical parts and high exposed places, and limited the mental RFC to detailed but not complex tasks. (R. 30). The ALJ acknowledged that Plaintiff's medical records are "lacking in terms of support or treatment for migraine headaches with aura. Very little evidence was submitted to the record about the [Plaintiff's] migraines, and other than the [Plaintiff's] testimony and subjective reports, the medical treatment notes are completely lacking documentation of the severity or frequency of migraine events." (R. 33). In fact, during the ALJ hearing, neither Plaintiff nor her counsel

10

cited migraine headaches in highlighting the conditions that allegedly prevent her from working. Where, as here, the Plaintiff was represented by counsel at the hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Plaintiff has not shown that the ALJ failed to develop the record as to Plaintiff's migraines.

Plaintiff also points to various portions of the record that she contends warranted greater restrictions in the RFC determination. As noted in the Commissioner's response brief, some of these arguments amount to "attempts to create inconsistencies where none exist." (Doc. 17 at 11). For example, the ALJ's decision explained in detail how she considered the prior administrative findings of Lisa Swisher, Ph.D., finding her opinion "persuasive" and "largely supported by her review of the file and . . . consistent with other evidence, including mental status examinations provided by treatment providers." (R. 32). Nonetheless, Dr. Swisher's conclusion "was not given in policy compliant language," and the ALJ's decision reasonably explained how she determined the mental RFC in light of the evidence.

Plaintiff's remaining RFC arguments object that the RFC did not include certain specific additional limitations, including excess absenteeism, additional breaks, and noise limitations that Plaintiff argues would preclude her from performing alternative work. (Doc. 10 at 7-11). These arguments essentially ask the Court to substitute its own view of certain evidence for the ALJ's. But where the ALJ's decision reflects a reasonable analysis of the

significantly probative evidence, and complies with applicable legal requirements, the Court may not re-weigh the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (stating that the court may not re-weigh evidence and "displace the agency's choice between two fairly conflicting views"); *see also Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Plaintiff's brief has identified no reversible error in the ALJ's RFC determination.

### B.   Step Five

Plaintiff contends that the ALJ's step-five finding is not supported by substantial evidence. She asserts that the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding the material distributor job. Plaintiff argues that the duties of that job exceed the RFC limitations to occasional interaction with the public and occasional changes in workplace settings.

Under SSR 00-4p, "[w]hen a VE [. . .] provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between [the VE's testimony] and information provided in the DOT." SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000). The "occupational evidence provided by a [VE] generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "[N]either the DOT nor the [VE evidence] automatically 'trumps' when there is a conflict." *Id.* at *2. Rather, "[t]he adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id.*

12

SSR 00-4p explains that an ALJ "may not rely on evidence provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." SSR 00-4p, 2000 WL 1898704, at *3. When a legitimate conflict exists between VE testimony and the DOT, the ALJ must "investigat[e] and elici[t] a reasonable explanation for any conflict" between them, and the failure to do so is reversible error. *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999); *see also Kreuger v. Astrue*, 337 F. App'x 758, 761-62 (10th Cir. 2009).

The DOT defines a material distributor as one who

> [d]istributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists.

230.687-010 *Advertising-material Distributor*, DICOT 230.687-010. The job encompasses variations such as Handbill Distributor, Pamphlet Distributor, and Sample Distributor. *Id*.

The Court agrees with Plaintiff that there is an apparent conflict between Plaintiff's RFC limitations to occasional interaction with the public, and occasional changes in workplace settings, and the material distributor job. On its face, the job description requires interaction with members of the public on a frequent basis, and could entail near-constant changes in a work setting. *Accord Rahn v. Berryhill*, No. 2:17-CV-02491-JDE, 2018 WL 1054299, at *5 (C.D. Cal. Feb. 23, 2018) (internal citation omitted) ("The DOT's description of this occupation strongly suggests it is likely and foreseeable that working with the public or 'in proximity to others' would be frequent, if not necessary, to perform 'essential, integral, or expected tasks in an acceptable and efficient manner.' To the extent

13

'common experience' provides guidance, it is difficult to imagine the performance of the job of advertising-material distributor without being in proximity to others."); *Stoaks v. Comm'r of Soc. Sec.*, No. 5:22-CV-00186-FDW, 2023 WL 4533377 (W.D.N.C. July 13, 2023) ("[T]he job of advertising material distributor would appear to result in constantly changing workplace settings."); *Joel L. v. Dudek*, No. 3:23-CV-2140-AHG, 2025 WL 926614 (S.D. Cal. Mar. 27, 2025) ("As the DOT specifically requires distributing advertising materials "'from house to house, to business establishments,' and perhaps most significantly 'to persons on street,' the Court finds it is likely and foreseeable that interacting with the general public would be necessary to perform 'essential, integral, or expected' tasks of the job.").[3] Although the ALJ asked the VE, and the VE confirmed, that her testimony had been consistent with the DOT, in light of the terms set forth in the DOT for the material distributor job, the VE's testimony cannot constitute substantial evidence in support of the ALJ's step-five determination in the absence of a reasonable explanation for the apparent conflict.

Furthermore, the error is not harmless. Here, the ALJ found that alternative jobs exist in significant numbers based on three identified jobs, representing a total of 51,000 jobs in the national economy, of which material distributor represents 20,000 jobs. The Commissioner argues that the Court should adopt other ALJs' findings, in other cases, that jobs totaling less than 31,000 constitute significant numbers. (Doc. 17 at 14-15). But the Tenth Circuit has explained that "the issue of numerical significance entails many fact-

---

[3] Notably, the Commissioner's response brief (Doc. 17) does not refute the assertion that a conflict exists between the DOT and the VE's testimony.

specific considerations requiring individualized evaluation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004 (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). As such, generally, the Court should not supply a dispositive finding that the remaining two jobs represent a significant number sufficient to satisfy the Commissioner's step-five burden. *See Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (remand appropriate where number of jobs is relatively few and it is not clear whether the ALJ found number of each job or collective number of jobs to constitute a significant number). Accordingly, remand is appropriate for the ALJ to resolve any conflict as to the alternative jobs and determine whether Plaintiff can perform other work existing in significant numbers.

## V.     Conclusion

For the reasons set forth above, the ALJ's conclusion at step five is not supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 30th day of September, 2025.

*Christine D. Little*

Christine D. Little
United States Magistrate Judge